256 N.J. Super. 286 (1992)
606 A.2d 1128
FRANK DelROSSI, APPELLANT-RESPONDENT,
v.
DEPARTMENT OF HUMAN SERVICES (POLICE), RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1992.
Decided May 15, 1992.
*287 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
*288 Rene Y. Blocker, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General; Mary C. Jacobson, Deputy Attorney General, of counsel).
John C. Eastlack, Jr., argued the cause for respondent (Carl D. Poplar, P.A., attorney).
No brief was filed on behalf of Merit System Board.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The Department of Human Services (DHS) appeals from a final determination of the Merit System Board (Board) awarding Frank DelRossi back pay, benefits which would have accrued during his suspension and attorney's fees.
In 1988, DelRossi was a police officer employed by DHS and serving in the provisional title of lieutenant. As a result of the filing of criminal complaints against him in April 1988, charging him with offenses unrelated to his employment, DHS suspended DelRossi without pay. Thereafter, Gloucester County Indictment 612-8-88 was filed charging DelRossi with third degree theft, hindering prosecution and third degree conspiracy to commit theft. DelRossi was permitted to enroll in the county's pretrial intervention program (PTI). N.J.S.A. 2C:43-12 et seq. After he successfully completed the program, the Law Division dismissed the indictment by order dated July 21, 1989.
DHS reinstated DelRossi in his permanent rank of sergeant effective August 1989, but refused to award him back pay and benefits. DelRossi appealed to the Board which "accepted and adopted the findings of fact and conclusion" contained in an Administrative Law Judge's initial decision and awarded DelRossi back pay from April 26, 1988 as well as "benefits which would have accrued during the period of his suspension" and counsel fees.
N.J.S.A. 11A:2-13 authorizes the suspension of an employee when the employee is charged with a crime of the first, second *289 or third degree unrelated to his job. The statute provides that the suspension shall continue until a disposition of the charge and that "[t]he board shall establish, by rule, procedures for hearings and suspensions with or without pay." N.J.A.C. 4A:2-2.5(a)(2) and -2.7, following the statute, authorize the immediate suspension of an employee who is charged with a crime. N.J.A.C. 4A:2-2.4 provides that "[i]n State service, suspension shall be without pay unless directly authorized to be with pay by the department head."
N.J.S.A. 11A:2-22 authorizes an award of back pay. It provides: "The board may award back pay, benefits, seniority and reasonable attorney fees to an employee as provided by rule." The only rules we have found authorizing an award of back pay are N.J.A.C. 4A:2-1.5(b) and N.J.A.C. 4A:2-2.10(a). N.J.A.C. 4A:2-1.5(b) provides in part:
(b) Back pay, benefits and counsel fees may be awarded in disciplinary appeals and where a layoff action has been in bad faith. See N.J.A.C. 4A:2-2.10. In all other appeals, such relief may be granted where the appointing authority has unreasonably failed or delayed to carry out an order of the Commissioner or Board or where the Board finds sufficient cause based on the particular case.
N.J.A.C. 4A:2-2.10(a) provides in part:
[w]here a disciplinary penalty has been reversed, the Board shall award back pay, benefits, seniority or restitution of a fine. Such items may be awarded when a disciplinary penalty is modified.
We conclude that these rules are ineffective as authority to support the Board's action in this case.
In De Marco v. Bd. of Chosen Freeholders of Bergen Cty., 21 N.J. 136, 121 A.2d 396 (1956), the Supreme Court extensively discussed the principles of law applicable to a public officer's claim for back pay accrued during a suspension pending the disposition of criminal charges. De Marco involved a county detective suspended pending disposition of an indictment charging him with willfully neglecting to perform his duties. After three years, the trial court dismissed the indictment on the State's motion.
The Supreme Court affirmed the trial court's judgment rejecting a claim for back pay. The Court noted that the *290 suspension was proper "for it would have been decidedly against the public interest for the plaintiff to have served as a law enforcement officer while he was under indictment." Id. at 139, 121 A.2d 396. The Court applied the common-law rule that a public officer's right to recover his salary is dependent on the officer's performance of the duties of the office. Id. at 141, 121 A.2d 396; accord Hillel v. Bor. of Edgewater, 106 N.J.L. 481, 150 A. 385 (E. & A. 1930) (municipal police officers could not recover back pay after reversal of their convictions).[1] The Court recognized, however,
that the Legislature could in clear and direct terms constitutionally allow compensation to all law enforcement officers who are suspended pending trial on an indictment for misconduct in office and are later acquitted or otherwise vindicated. Cf. Mullane v. McKenzie, 269 N.Y. 369, 199 N.E. 624, 103 A.L.R. 758 (1936). While such legislation would tend to satisfy the individual interests involved it would admittedly do so by placing upon the public the burden of expenditures for salaries without corresponding services.... The conflicting policy considerations are socially important and far reaching and the proper course to be carefully chosen and ultimately followed will rest with the Legislature rather than with the courts.
De Marco, supra, 21 N.J. at 143-44, 121 A.2d 396.
In De Marco, plaintiff contended that several statutes had changed the common-law rule and that they applied to his case. The Court strictly construed the statutes relied upon by plaintiff and rejected their application to plaintiff's case. For example, a statute authorizing back pay to officers and employees of municipalities who were illegally dismissed or suspended, R.S. 40:46-34, was held not to apply to county employees. Id. at 145, 121 A.2d 396. Similarly, the Court rejected the applicability of a statute, N.J.S.A. 2A:135-9 (repealed, N.J.S.A. 2C:98-2; *291 now N.J.S.A. 2C:51-2), requiring restoration to office of an employee who forfeited the office upon conviction, when the conviction is reversed. Id. at 146, 121 A.2d 396. The Court observed:
[T]he statute does not manifest any purpose to alter the independent common-law principle that a public officer's right to receive salary is dependent on the performance of the duties of his office; and in any event it is not to be applied in favor of a public officer whose office was never forfeited and who seeks compensation for a period during which he rendered no services because he was properly under suspension.
Ibid.
In the present case, the Legislature did not alter the common-law rule. Rather, it authorized the Board to award back pay "as provided by rule." N.J.S.A. 11A:2-22. As previously indicated, N.J.A.C. 4A:2-1.5(b) and N.J.A.C. 4A:2-2.10(a) are the only potentially applicable rules. But these rules, with the exception of the last clause of § 1.5(b), by their terms apply only in "disciplinary" appeals or when the board reverses or modifies a "disciplinary penalty." The suspension of DelRossi was not disciplinary. DHS was not punishing DelRossi. See Russo v. Walsh, 18 N.J. 205, 210, 113 A.2d 516 (1955), which distinguished a suspension of definite duration as a form of punishment for misconduct from a "suspension as a means of rendering impassive a public employee as an incident to and pending his trial for misconduct." Accord Vanderbach v. Hudson County Bd. of Taxation, 133 N.J.L. 499, 509, 45 A.2d 142 (Sup.Ct. 1946), aff'd., 135 N.J.L. 349, 52 A.2d 143 (E. & A. 1947). Indeed, DHS could not punish DelRossi at that time because he was cloaked with a presumption of innocence and it had not been established that he had committed the offenses with which he was charged. He was suspended because the pending indictment prevented him from effectively performing the duties of a police officer, especially an officer of rank. See Russo, supra, 18 N.J. at 212, 113 A.2d 516.
The Administrative Law Judge so found. In his initial decision, which the Board adopted, the ALJ stated that "[t]he indictment of a police officer presents a delicate public policy *292 dilemma which needs no great elaboration. Suspension ... is appropriate to maintain order and the effective direction of public services." The ALJ's determination is consistent with N.J.A.C. 4A:2-2.7(a)(1) which limits a suspension hearing
to the issue of whether the public interest would best be served by suspending the employee until disposition of the criminal complaint or indictment. The standard for determining that issue shall be whether the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services.
The last clause of § 1.5b, authorizing the Board to award back pay when it "finds sufficient cause based on the particular case," is inadequate because it contains no standards to guide the Board's exercise of the power delegated to it by N.J.S.A. 11A:2-22. While the Board may have plenary power in disciplinary matters, N.J.S.A. 11A:2-6 and -19, subject to limited judicial review, see Henry v. Rahway State Prison, 81 N.J. 571, 410 A.2d 686 (1980), the power to award back pay in the present non-disciplinary context would contravene the common-law principle that public officers shall be paid only for services rendered. Though the Legislature granted that power to the Board in N.J.S.A. 11A:2-22, it directed the Board to exercise that power through rulemaking. Thus, this is not a case in which the Board had discretion to exercise its authority either by adjudication or by rulemaking. Matter of C.V.S. Pharmacy Wayne, 116 N.J. 490, 503, 561 A.2d 1160 (1989); DEP v. Stavola, 103 N.J. 425, 436-37, 511 A.2d 622 (1986).
Proceedings which are truly disciplinary arise in almost limitless contextual variety, and the Legislature has granted the Board the authority to "render the final administrative decision" in those cases. Thus, in disciplinary proceedings the Board's role is clearly adjudicatory and the Board acts on a case by case basis. Consequently, N.J.A.C. 4A:22.10(a), providing for back pay when the Board reverses or modifies a disciplinary penalty, may be an effective exercise in a disciplinary context of the authority granted to the Board in N.J.S.A. 11A:2-22.
*293 The award of back pay in the context of the present case, however, stands on a different footing. It requires a policy decision by the Board as to the treatment of persons suspended because of pending criminal charges. It is more a policy making function than an adjudicatory function because the contexts are limited and predictable.
Criminal charges are disposed of by trial resulting in acquittal or conviction, entry of a guilty plea resulting in a conviction, dismissal of the charges either on defendant's motion or at the request of the prosecuting authority (equivalent perhaps to an acquittal) or dismissal of the charges through PTI or similar programs that avoid an adjudication of guilt or innocence. Whether a particular disposition justifies an award of back pay requires a quasi-legislative decision by the Board[2]. De Marco, supra, 21 N.J. at 143-144, 121 A.2d 396; see Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 332, 478 A.2d 742 (1984). Although the decision may be clear in the event of a conviction, it may not be so clear in the event of an acquittal. See De Marco, supra; Hillel, supra. Where an indictment is dismissed through successful completion of a diversionary program, as in this case, the Board must determine whether back pay is appropriate and, if so, the conditions under which it will be awarded. See Cressinger v. Bd. of Ed. City of Newark, 256 N.J. Super. 155, 606 A.2d 849 (App.Div. 1992) (dismissal of indictment after completion of PTI not a favorable termination entitling employee to counsel fee reimbursement under N.J.S.A. 18A:16-6.1); Kerwick v. Trenton, 184 N.J. Super. 235, 445 A.2d 482 (Law Div. 1982) (plea agreement resulting in dismissal of indictment and a conditional discharge for possessory drug offense not a disposition which would support police officer's *294 claim for reimbursement by municipality); see also Thomas v. N.J. Inst. of Technology, 178 N.J. Super. 60, 427 A.2d 1142 (Law Div. 1981) (acceptance into PTI not a favorable termination in plaintiff's favor as to support a malicious prosecution action); cf. Mondrow v. Selwyn, 172 N.J. Super. 379, 412 A.2d 447 (App.Div.), certif. denied, 84 N.J. 449, 420 A.2d 347 (1980) (dismissal of cross-complaints for assault by agreement of parties not a favorable disposition as to support a malicious prosecution action). The Board's quasi-legislative decisions resolving these issues must be expressed in a properly adopted rule.
N.J.A.C. 4A:2-1.5(b) and N.J.A.C. 4A:2-2.10(a) do not address those predicable scenarios and, therefore, the appointing agency, State employees and the public remain uninformed regarding the Board's policy determinations except as they are revealed by the Board ad hoc. See Vi-Concrete Co. v. State, DEP, 115 N.J. 1, 12, 556 A.2d 761 (1989). Adoption of a rule expressing the required policy decisions and the adoption of standards implementing those decisions also provide guidance to the Board in discharging its function, id., thereby preventing arbitrary action. Finally, we note that rule adoption requires "public notice of the anticipated action, broad participation of interested persons, presentations of the views of the public, the receipt of general relevant information ... and the opportunity for continuing comment on the proposed agency action before a final determination." Metromedia, supra, 97 N.J. at 331, 478 A.2d 742.
We conclude that the Board has not adequately exercised the authority delegated to it in N.J.S.A. 11A:2-22 and, therefore, the common-law rule that public officers are to be paid only for services rendered is applicable.
The award of back pay, accrued benefits and attorneys fees is reversed.
NOTES
[1] The common-law rule, however, does not apply to public employees who are not public "officers." White v. Twsp. of North Bergen, 77 N.J. 538, 545, 391 A.2d 911 (1978); Ross v. Bd. of Chosen Freeholders, 90 N.J.L. 522, 102 A. 397 (E. & A. 1917). As a police lieutenant (or sergeant), DelRossi was an "officer." De Marco, supra; Hillel, supra; Duncan v. Bd. of Fireand Police Comm'rs, City of Paterson, 131 N.J.L. 443, 445, 37 A.2d 85 (Sup.Ct. 1944). See generally, Glasser, A New Jersey Municipal Law Mystery: What is a "Public Office?," 6 Rutgers L.Rev. 503 (1952).
[2] Compare N.J.S.A. 40A:14-149.2 which authorizes back pay to a municipal police officer suspended pending disposition of criminal charges if the officer "is found not guilty at trial, the charges are dismissed or the prosecution is terminated." N.J.S.A. 40A:9-172 authorizes back pay to any municipal officer or employee whose suspension "shall be judicially determined to be illegal."